**UNITED STATES v. URAM et al.**

No. 247.

Circuit Court of Appeals, Second Circuit.

March 19, 1945.

188

Conner & Chopnick, of New York City (David C. Lewis, Max Chopnick, and H. I. Bucher, all of New York City, of counsel), for appellant.

John F. X. McGohey, of New York City (Edward W. McDonald and Joseph Brandwen, both of New York City, of counsel), for appellee.

Before EVANS, CLARK, and FRANK, Circuit Judges.

EVANS, Circuit Judge.

This appeal is from a sentence based on a conviction of the violation of certain Federal criminal statutes. The two defendants, Henry Sohmer and Morris Uram, were charged in three counts of an indictment with: (a) violation of 12 U.S.C.A. § 1731 (a); (b) violation of 18 U.S.C.A. § 80; and (c) with a violation of the conspiracy statute, 18 U.S.C.A. § 88, the conspiracy being to commit the offenses charged in counts one and two.

Defendant Uram did not appeal. Sohmer was sentenced to fifteen months' imprisonment on the conspiracy count and on the other two counts, his sentence was suspended.

More specifically, it should be said the first count charged defendant with causing a loan to be made for $800,

"which was to be expended on the home of Mr. and Mrs. Royal V. Campbell and more particularly in reroofing the building and repairing the sidewalks and for no other purpose; that in truth and in fact as defendants well knew, the respresentations of the borrowers were false and the moneys received from said loan was not expended on the roof or sidewalk but for personal and private purposes in no way related to the aforesaid premises or on the said proposed improvements *thereon*."

The second count charged defendant with knowingly and falsely covering up a material fact in respect to said 1939 loan.

The story of the alleged crime will be but briefly stated:

Mr. and Mrs. Campbell were the owners of a farm, the house on which was in need of repair. In 1938 they procured a $550 loan (guaranteed by the F.H.A.), which loan was in default at the time the loan in question was sought, which was in January, 1939. They made another loan ($800) in 1939. This loan is the basis of the criminal charge.

Both loans were effected by and through the defendants.

The Government contends that defendants knew the 1938 loan was in default at the time the 1939 application was made, and failed to disclose that fact; defendants promised the Campbells a cash payment out of the $800 of $200, which payment was in fact made. The Campbells were given to understand that part of the proceeds of the $800 loan would be used in payment of the first loan, whereas such payment was not made. The $800 loan was ostensibly to make repair on the roof of the Campbells' house and to fix up other places. Only about $50 worth of repair work was done on the premises.

The Campbells were not defendants. They testified for the Government.

The financial condition of the borrowers was told by Mrs. Campbell.

"We bought the farm for $7,500 and $300 have been paid thereon." "We borrowed $1,000 with which to buy the cows." "We owed for feed bill, for electric light bill, etc." In response to urging from defendants, who were endeavoring to have her apply for the loan, she told defendant Sohmer that "We owed $50 a month for the place." "$50 a month for the cows." "We owed $7,200 on the place." "We owed $1,000 on the cows." "We had eight children. That was enough without any more debts". In fact, save for the eight children, the application failed to show any basis of a F.H.A. loan. The item—the eight children—is the only disclosed asset which would bear "looking into."

It was and is the Government's position that defendants were using the Campbells for the purpose of defrauding the Government by presenting them as needy borrowers who would use the money received for

a worthy purpose, namely, for making necessary repairs. These representations were false and made in bad faith, for it was understood that the proceeds were in fact not to be so used, but rather for the personal gain of the parties—including the defendants.

The proof seems to strongly support the charge, and the jury's verdict was amply sustained by the evidence.

The sentence under the conspiracy count was within the prescribed limits of the statute. It is therefore unnecessary to consider the other counts. We have done so and conclude each states an offense. The evidence supports the verdict as to each count.

Sohmer assigns many errors, each of which we have considered and rejected as either contrary to law or contrary to the evidence.

(1) Improper opening argument of the U. S. Attorney when he spoke of the fraudulent details of the 1938 loan whereby the Campbells received but $100 worth of repairs and $100 cash out of the $550 loan. Improper introduction into evidence of extraneous details of 1938 loan transaction in an effort to produce impression on jury that the Campbells were "mulcted and duped."

(2) Counts 1 and 2 of the indictment are invalid. The first count is invalid because it alleges a *future* act as the basis of the crime—"there is no charge of any false statement concerning a past or an existing fact." The first count states that the defendants knew the $800 was not *to be* expended for the repairs, but were to be used for personal purposes and gains. The second count is invalid because the statute, Title 18 U.S.C.A. § 80, requires the concealment to be by "*any trick, scheme, or device*" and none was alleged in the second count, therefore an essential requisite of the crime was lacking.

(3) Sohmer states he had nothing to do with the false statement. Admitting he was present when the Campbells signed the forms *in blank,* on the 24th of January, 1939 he contends the proof showed he had nothing to do with the filling in of the forms. That was done subsequently by the co-defendant. The indictment charges the commission of the crime on the 24th, whereas if any crime were committed at all, it was several days thereafter when the

forms were filled in and submitted for the purpose of obtaining credit.

(4) Counts 1 and 2 are based on the same alleged false statement and therefore charge but a single crime. Each aspect of its alleged falsity may not be made the basis for a separate criminal charge. Also, count 2 is invalid because it is based under a general criminal statute, whereas the special statute, alleged to be violated in count 1, is the statute which controls.

(5) The crime, if any, was committed in New Jersey, not in New York, because that is where the loan application etc., was submitted for credit approval.

(6) Sohmer may not be convicted of a conspiracy to commit a crime where it appears he is also convicted of the crime which is the object of the conspiracy.

(7) There is no evidence to support the verdict against Sohmer.

(8) Errors in instructions to the jury: failure to charge that the Campbells' testimony should be scrutinized carefully; error in instruction when jury during deliberations asked for further instructions; error in failing to instruct as to limiting evidence of past crime to issue of intent, and several other errors.

■ 1. Both as to the opening argument and the introduction of evidence, appellant complains of the mention of the 1938 transaction. The 1938 transaction was of great pertinency to the instant charge—its existence had to be shown so that the falsity of the statement could be proved. As Sohmer concedes, it bore heavily on his intent in the 1939 transaction. It proved his "knowledge" and threw light on his purpose in the 1939 transaction. In order to prove the concealment of a material fact under the second count, that material fact had to be explained. Sohmer was not a stranger to the Campbell financial situation when he solicited the second transaction. Had such been the case his claim of innocence would have been strengthened.

■ 2. Count one is not invalid for statement merely of a possible future occurrence. It is an allegation of a present statement and the assertion of existing intent, and promise, to use money for the specific purpose of "recovering the entire roof and repairing all sidewalks, and for no other purpose" whereas in fact the intent was to divert $200 to other uses entirely

and to spend but a fraction of the remaining sum on the project stated, upon which representation the loan was procured. (See Knickerbocker Merchandise Co. v. United States, 2 Cir., 13 F.2d 544; Brooks v. United States, 8 Cir., 146 F. 223.)

Count two is not invalid because it fails to allege the "trick, scheme, or device" by which the material fact is to be concealed. If it be not, as the Government contends, that such statutory phrase "trick, scheme, or device" modifies only the "covering" up of a material fact, the false statement in and of itself would be sufficient to constitute, in the setting of this conspiracy, a scheme and trick—in fact, another clause of Sec. 80, makes it a crime to "make or cause to be made any false or fraudulent statements or representations." It is the knowing falsity of the statement which is the material part of the statutory crime, not the vehicle of its perpetration.

3. Sohmer's contention that there is no proof of his connection with the alleged crime—that he was present merely when the Campbells signed the applications in blank—has only plausibility for its support. A reading of the record removes any apprehension one might otherwise have as to his guilty participation in the commission of the fraud. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614. He was the instigator of the whole transaction, was present at its inception, a real participant therein, and a beneficiary thereof. So the jury could have well found, and did find from all the evidence.

4. The charge that counts one and two are for the same alleged crime, is without merit. They state two separate and distinct fact bases,—one, that the loan was obtained on the misrepresentation that the proceeds would be used for reconstruction purposes, when they were to be used for other unrelated purposes, and second, the concealment of the fact that a prior loan was unpaid. One was a negative act. The other was a positive act. They did not even concern the same facts. As to the violation of separate statutes, since the same evidence was not required for the proof of each crime, both charges may be upheld, even though both crimes grow out of the same general transaction. (Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153; Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306.)

5. As to the contention that the crime was committed, if at all, in New Jersey, it is sufficient to observe that the evidence amply supports a finding that the conspiracy and the overt acts, as well as the charges of concealment, and the making of the false statement, all took place in New York. Jurisdiction of the conspiracy count lay in the Federal courts of both states.

6. The Supreme Court long ago held contrary to defendant's contention that he may not be convicted of a conspiracy to commit acts which he is found guilty of having committed under other counts of the indictment. Said the Court, "At all events, the liability for conspiracy is not taken away by its success,—that is, by the accomplishment of the substantive offense at which the conspiracy aims." Heike v. United States, 227 U.S. 131, 144, 33 S.Ct. 226, 229, 57 L.Ed. 450.

7. We have no hesitancy in concluding that the record is replete with evidence sufficient to support a conviction of Sohmer of all the charges stated in the three counts of the indictment.

8. Sohmer's criticism of the charges to the jury is not well made. We will mention only the first. When the jury asked for a rereading of the instructions on conspiracy, the judge, with the consent of both counsel read the same and then added:

"I may add this further thought to the jurors: Counsel in the case on both sides have brought before the Court and jury all of the admissible evidence that they know of to enable the jury and the Court to perform their respective duties. The Court has fully instructed the jury on the law applicable to the case. It is not known to anyone of us, the attorneys or the trial judge, what else we could do or say that would help the jury perform its functions. You have all of the aids that counsel or the court know of to give you."

There was no error in this instruction. Moreover, it was innocuous. No harm was done to either party (and probably no help was given to the jury), by telling them that the judge is unable to further enlighten them, that their task has yet to be done, and he and the attorneys have done all they could.

Several of appellant's assignments of error border on the frivolous.

The judgment is affirmed.