**UNITED STATES v. BOROW.**

Crim. A. No. 10451.

United States District Court
D. New Jersey.
Nov. 13, 1951.

Grover C. Richman, Jr., U. S. Atty., Newark, N. J., by Stuart B. Rounds, Asst. U. S. Atty., Trenton, N. J., for plaintiff.

Thorn Lord, Trenton, N. J., for defendant.

FORMAN, Chief Judge.

Anticipatory of trial in this matter defendant, Louis S. Borow, filed a motion to dismiss the indictment herein on two grounds: (1) that this court was without jurisdiction to try the offense, presumably in view of the provisions of Article 3, Section 2, Paragraph 3 and of the Sixth

Amendment to the Federal Constitution [1] and Rule 18 of the Federal Rules of Criminal Procedure, 18 U.S.C. foll. § 687 [2], and (2) that the indictment failed to contain a sufficient statement of the essential facts of the offense charged.

The latter ground is not strenuously argued. I am convinced that the indictment fairly apprises the defendant of the nature of the offense with which he is charged, so that its dismissal is not required. See United States v. Levy, 3 Cir., 153 F.2d 995.

However, the attack upon this court's jurisdiction based upon improper venue presents a more serious problem.

The indictment charges that on or about August 2, 1948 at Bound Brook, in the County of Somerset and State and District of New Jersey, the defendant " * * * did knowingly, willfully and unlawfully falsify, conceal, and cover up by tricks, schemes and devices, material facts, and did make and use false and fraudulent representations, in matters within the jurisdiction of an agency of the United States, to wit, the War Assets Administration, that is to say, the defendant did then and there place or cause to be placed in the United States mails for delivery to War Assets Administration, Box 216, Wall Street Station, New York 5, New York, a letter wherein he falsely represented to the War Assets Administration as follows:

"1. That he was Purchasing Agent for Bound Brook Hospital, 507 Church Street, Bound Brook, New Jersey.

"2. That said hospital desired to purchase a large quantity of drugs from said War Assets Administration, subject to its authorized 95% discount.

"Whereas in truth and in fact, the defendant was not Purchasing Agent for said hospital and said hospital did not desire to purchase the drugs mentioned in said letter, but the defendant desired to purchase said drugs for his own use and profit."

The Government, in bringing this indictment, was apparently under the misapprehension that the letter was mailed at Bound Brook, New Jersey, and it so alleged. It subsequently discovered that the letter was prepared at Plainfield, New Jersey and delivered in person by the defendant at New York, and, accordingly, on October 9, 1951, the attorneys for the Government and the defendant stipulated the following facts:

"1. On August 2, 1948, the defendant, Louis S. Borow, had his daughter, Ivy Borow, type at Plainfield, New Jersey, a letter addressed to War Assets Administration, Box 216, Wall Street Station, New York 5, New York.

"2. The letter was typed on one sheet of the stationery of Bound Brook Hospital; attached to it was a list, also typewritten under the defendant's instructions, consisting of two typewritten pages.

"3. The said letter, with the list attached, was delivered in person by the defendant to the office of the War Assets Administration in New York, New York on August 2, 1948.

"4. The said letter is identical with the letter which is a part of Exhibit G-3, received in evidence at the first trial of this cause on May 14, 1951. The original list above referred to is not identical with the list which is a part of the said Exhibit G-3.

[1] "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crime shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. Art. III, sec. 2, par. 3.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which dis- trict shall have been previously ascertained by law * * *." U.S.Const. Amend. VI.

[2] "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed, but if the district consists of two or more divisions the trial shall be had in a division in which the offense was committed." Fed. Rules of Crim.Proc., rule 18, 18 U.S.C. foll. § 687.

"5. The list which is included in said Exhibit G-3 was substituted for the original list at the New York office of War Assets Administration on August 2, 1948."

The question then narrows down to whether this court has jurisdiction to try the defendant for violation of § 80 of Title 18 U.S.C.A., 52 Stat. 197, which provides in part that no one shall knowingly and willfully falsify or conceal or cover up by any trick, scheme or device a material fact, or make or cause to be made any false or fraudulent statements or representations in any manner within the jurisdiction of any department or agency of the United States.

The Government contends that this offense was committed by the defendant in the District of New Jersey when he had the letter dated August 2, 1948 prepared in New Jersey at his direction and that the presentation of the writing to a Government agency is not an essential ingredient in the offense, citing the case of United States v. Ganz, D.C., 48 F.Supp. 323, as authority on the point. That case is clearly distinguishable from the instant matter. There the defendant was indicted under § 80, among other counts, for issuing a false invoice listing the price of goods sold at a price less than the actual sale price in violation of the applicable maximum price regulation (No. 107, Sections 1315, 1355), issued by the Office of Price Administration which required a seller to furnish each purchaser with a written statement setting forth the price of the goods sold. The indictment was attacked on the ground that it alleged that false bills were presented to a person other than a department or agency of the United States and that unless the false bills were presented to such a department or agency there was no offense indictable under § 80. The court rejected this contention and held that the offenses charged fell squarely within the statutory provision. It asserted that it was not essential that the false bills should be *presented* to an agency or department of the United States and that the requirement of the statute was fulfilled

if the false bills themselves were made in a "matter within the jurisdiction" of such department or agency. However, there the accurate pricing by the defendant in his statement to his customer was required by law, and was so indicated by the court when it stated: "It is apparent from the indictment that the alleged false bills were made in pursuance of Section 1315, 1355 of Maximum Price Regulation No. 107, and thus within the jurisdiction of the Office of Price Administration." 48 F.Supp. at pages 325-326.

In the instant matter it is apparent that in order for the defendant to have made a false statement or representation in a "matter within the jurisdiction" of the War Assets Administration a presentation of said statement or representation to the agency would be required. Obviously, the mere filling out of a false application, without more, would not be a "matter within the jurisdiction" of the War Assets Administration or constitute a crime in violation of § 80.

The Government further argues that the indictment has been properly brought in this district in that the offense charged is one of "dual jurisdiction". The Government cites as authority for this contention the case of United States v. Uram, 2 Cir., 148 F.2d 187, presumably relying on the then applicable section 42 of the Judicial Code: "When any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein."[3]

However, a close examination of the opinion in the Uram case indicates that it is not authority for the proposition of law advanced by the Government. In that case the defendant appealed from a *sentence* based on a conviction of the violation of certain federal criminal statutes in connection with obtaining a Federal Housing Administration loan. He had been charged

3. 28 U.S.C. § 103 (1927 ed.); now incorporated in 18 U.S.C. § 3237.

in three counts of an indictment with (a) violation of the National Housing Act, 12 U.S.C.A. § 1731(a); (b) presenting false claims in violation of 18 U.S.C. § 80; and (c) conspiracy to commit the two foregoing substantive offenses. The defendant-appellant had been sentenced to fifteen months imprisonment on the conspiracy count and on the other two counts, his sentence was suspended.

The defendant challenged the right of the prosecution to indict him in the Southern District of New York upon the ground that the crime, if any, was committed in New Jersey where the loan application had been submitted for credit approval and not in New York where the .false statement in the application had been made. In sustaining the jurisdiction of the trial court, the Court of Appeals stated: "As to the contention that the crime was committed, if at all, in New Jersey, it is sufficient to observe that the evidence amply supports a finding that the conspiracy and the overt acts, as well as the charges of concealment, and the making of the false statement, all took place in New York. *Jurisdiction of the conspiracy count lay in the Federal courts of both states."* [Emphasis added.] 148 F.2d at page 190.

Therefore it becomes clear that the court was concerned only with the jurisdiction of the trial court with respect to the conspiracy count and not with the substantive counts under § 80. The opinion of the court indicated that the appeal was only from the sentence on the conspiracy count and that sentence on the other two counts had been suspended. Since it is well recognized that an indictment based on a conspiracy may be prosecuted in any district where any of the overt acts have been committed the Uram case cannot be construed as supporting the Government's contention. See Hyde v. Shine, 199 U.S. 62, 25 S.Ct. 760, 50 L.Ed. 90.

■ But it is to be remembered that there is no conspiracy count here and the gist of the offense alleged in this indictment is that the defendant concealed and made false representations in a matter within the jurisdiction of the War Assets Administration. That alleged crime consisted of one single act, that is, the delivery to the government official in New York City of the letter containing the false statements, and no crime was committed merely in the preparation of the letter in New Jersey absent its delivery. Under such circumstances, Section 42 of the Judicial Code becomes inapplicable. Reass v. United States, 4 Cir., 1938, 99 F.2d 752, is a case in point.

In that case the defendant was indicted, tried and convicted in the Northern District of West Virginia for knowingly making a false statement for the purpose of influencing the action of the Federal Home Loan Bank of Pittsburgh, Pennsylvania in violation of 12 U.S.C.A. § 1441(a). The evidence showed that the application containing the false statement was prepared in the Northern District of West Virginia, and taken in person by the defendant from West Virginia to Pittsburgh, and there completed and presented to the bank. The Court of Appeals of the Fourth Circuit reversed the conviction upon the ground that the District Court for the Northern District of West Virginia lacked jurisdiction to try the offense. The court held that § 42 of the Judicial Code was inapplicable, noting that this statute was particularly applicable to the jurisdiction over crimes which consist of two or more distinct elements or acts that may be committed in different districts, such as the crime of conspiracy. It stated that the offense in question belonged to that class of crimes which lacks continuity of performance and consists of a single act which occurs at one time and at one place in which only it may be tried, although preparations for its commission take place elsewhere. [4] The court then made this apposite analysis: "The statute on which the indictment is based was passed to protect the Federal Home Loan Bank from fraudulent attempts to secure favorable action on applications for loans and like matters. The gist of the offense is the attempt to influence the cor-

---

4. See also United States v. Newton, D.C., 68 F.Supp. 952, affirmed 4 Cir., 162 F.2d 795; United States v. Eisler, D.C., 75 F.Supp. 634.

poration, * * * and communication of the false statements to the corporation constitutes the very essence of the crime. It is in this sense that the statute condemns the making of a false statement for the purpose of influencing the bank. The mere assembling of the material and its arrangement in a written composition containing the misrepresentations of fact can have no effect, and it is only when they are communicated to the lending bank that the crime takes place. It follows that the acts performed by the defendant in Wheeling, although preparatory to the commission of the crime, were no part of the crime itself. That took place entirely in Pittsburgh where the writing previously prepared was presented to the bank. * * *" 99 F.2d at page 755.

It should be noted that the court expressed no opinion on what the situation might have been had the defendant mailed the false statement in West Virginia and I make a similar reservation in the instant matter.

In the case of United States v. Levy, supra, the Court of Appeals for this circuit sustained an indictment, attacked similarly as here, but the facts in that case are completely at variance with those in the instant case and it is interesting to note that the court specifically approved the conclusions of the Reass case, 153 F.2d at page 996. Since the facts charged here fit the legal theory enunciated in the Reass case, I am constrained to follow its holding.

In the consideration of this motion I am not unmindful of the hazard presented by the possibility that the statute of limitations has run, perhaps preventing any new indictment from being brought against the defendant in the Southern District of New York, and, further, I am persuaded that in the instant matter no hardship to the defendant would result from his trial for the offense with which he has been charged in the vicinity of his residence, but these cannot be controlling factors here. Questions of venue in criminal cases are not merely matters of formal legal procedure. United States v. Johnson, 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed.

236. The constitutional provisions as to venue assure to the accused a trial in the place where the crime is committed and are not concerned with the domicile of the accused. Haas v. Henkel, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569.

The constitutional guarantees are our indestructible bulwarks against the invasions of liberty, and although seeming aberrations may occur in individual and *isolated* cases, I am not free to deviate from their universal application.

Accordingly, defendant's motion to dismiss the indictment will be granted and an order should be settled in conformity therewith.